We have five cases on the calendar this morning, three PTAB appeals, trade case from the Court of International Trade, and an employee case from the MSPB, which is being submitted on the briefs and will not be argued. The first case this morning is Intellectual Ventures v. FedEx, 2018, 2372 and 73, Mr. McNish. Good morning. Kevin McNish from Demarest LLP, arguing on behalf of Appellant Intellectual Ventures II LLC. May it please the Court. The Court should reverse the Board's final written decision about the 715 patent, Claims 1, 2, 11, and 12, for at least two reasons. First, the Board erred in finding that the Jones reference teaches the tag reading limitations in each of the claims on appeal, attempting to read each tag at each successive point in Claims 1 and 2. Let me just clear the deck. Why aren't the reading limitations, whether Jones teaches reading and whether or not waived, as not having been raised below? So Your Honor, we presented the argument in our patent owner response at Appendix 342 through 344 that Jones is not undertaking any action to read these tags. Ultimately, the way Jones works is at the successive points that the Board identified, these predetermined stops, these predetermined locations, the Vehicle Control Unit, which is the purported tag that travels with the vehicle in Jones, ultimately decides whether to send its travel data to Jones' Base Station Control Unit, the structure alleged to form the reader. We identified that in our patent owner response, that it's an argument we presented to the Board. FedEx even quoted some of that argument in its reply, that's at Appendix 376, and in particular our discussion of the Vehicle Control Unit sending, in its discretion, its travel data to the Base Station Control Unit at the predetermined stops or locations, and that's Appendix 376. Again, we presented this in our demonstratives to the Board at Appendix 470, and again, an oral argument at Appendix 505, and that's the oral argument transcript at page 19, lines 3 through 8. And finally, Your Honor, the Board discussed this argument in its final... Did those citations or those arguments fairly raise, you think, the active reading argument that you're making now? I beg your pardon, Your Honor? The active reading argument that you're making? Yes, Your Honor. So those citations relate to our contentions that the Vehicle Control Unit simply sending the travel data that it has at the predetermined stops or locations don't constitute an attempt to read, and that the reader is not a reader for reading each tag at each successive point. Ultimately, what it comes down to is the Vehicle Control Unit is what's deciding whether it's sending its travel data, and the Base Station Control Unit doesn't have features for, or doesn't attempt to read each of those Vehicle Control Units at each successive point. It's up to the Vehicle Control Unit as we presented the Patent Trial and Appeal Board. So Your Honor, turning to the substance of that argument, as we noted in our blue brief as well, the claims aren't about what the tag does. It's totally agnostic about what the tag does. Instead, the claims are about acts performed attempting to read in Claims 1 and 2, or features of the reader that is in Claims 11 and 12, a reader for reading. So, and what's happening at the predetermined stops or locations in Jones that the Board's final written decision mapped to the successive points in the claims, is that ultimately the Vehicle Control Unit sends whatever data it has, whatever travel data it has, whatever purported identity information it has, to the Base Station Control Unit. The Base Station Control Unit isn't attempting to do anything when the tags are at those purported tags, these Vehicle Control Units, when those tags are at the successive points. And for those reasons, Jones doesn't teach the attempting to read limitation in Claim 1, and it doesn't teach the reader for reading in Claim 11, and the Board erred in finding otherwise and substantial evidence does not support the Board's decision. I want to briefly address some of the arguments that the appellee made, that FedEx made in its red brief. You know, there's some discussion about active RFID, and you know, FedEx contends that it's appropriate to present this on the first time on appeal because we purportedly waived our arguments about this active approach, active reading approach. We respectfully disagree with that, but even if that's true, it doesn't necessarily change the principle here, because ultimately the active RFID embodiment in the claims nonetheless still requires attempting to read, right? And there's no attempt to read by Jones' Base Station Control Unit at the predetermined stops or locations as the claims require. So again, FedEx also contends in its red brief that one of the, that simply receiving this travel data is enough to meet the attempting to read limitations and enough to meet the reader for reading limitations. We disagree. Ultimately, attempting to read, attempting to obtain this identity information at the successive points, and you know, a reader for reading at each tag, at each of these successive points, features for reading at each of these successive points, is very different from merely obtaining something when gratuitously given. And as an example, your honors, we have a holiday season coming up. Many people will receive things gratuitously given that they did not attempt to obtain. We have, in sort of the running joke lexicon, fruit cakes. Nobody really attempts to obtain one of those, but they do gratuitously receive them. And that's a similar scenario to what we have in Jones. There's ultimately no attempt to- They may be gratuitously received, but enjoyed. That's true, your honor. And I apologize if I've offended your taste in Christmas desserts. But nonetheless, there are gifts that people attempt to, that do not attempt to obtain, but nonetheless receive that are gratuitously given. And that's ultimately similar to the scenario we have in Jones. There's no attempt to receive this travel data from the vehicle control units at the successive points, at the predetermined stops or locations. And Jones' purported reader, the base station control unit, is ultimately entirely dependent on the vehicle control units, these purported tags, to send their travel data, when they determine that they've arrived at the predetermined stops or locations, to the base station control unit. So for those reasons, Jones doesn't teach attempting to read each tag at each successive point, and Jones doesn't teach a reader for reading each tag at each successive point and the time of each reading. So for those reasons alone, that's enough to reverse the board's decision in its entirety. I want to turn, with some of my remaining time, to the data structure limitations in dependent claims 2 and 12. And in particular, I'd like to turn to the cell limitations. That is, a cell corresponding to each tag at each successive point in claim 2, that and then in claim 12, where in the database includes a data structure having a cell corresponding to each tag at each successive point. Now starting with that, we have to start from what the board did find about Jones. And when you take a look at appendix 24 in the board's final written decisions, the board states that the reference, Jones, does not expressly state whether its table that it describes includes a separate cell for each tag at each successive point. And Counselor, FedEx's expert opined that storing the information in separate cells would have been a typical and well-known way to store such information. Why is that wrong? So, Your Honor, it's ultimately conclusory. It's just a pure ipsodixit from the expert. And even if it were a well-known option to store- Isn't that what we get from experts? They're qualified in a certain area, and they give their opinions, and that's substantial evidence. I mean, you all come in here and say the experts' opinions are conclusory when you don't like them, but that's what experts are supposed to do, give their opinion about what a skilled artist wouldn't understand. Sure, maybe he could have explained it a little bit better, but isn't the board entitled to rely on it? More importantly, isn't it substantial evidence on our deferential standard or review? Your Honor, I would disagree that the conclusory testimony that Dr. Hill provided in this case is sufficient to constitute substantial evidence, but let me allay your concerns on that. Even if you accept that everything that Dr. Hill said was true and supported by substantial evidence, it's not legally sufficient to establish a case of obviousness. And ultimately, what Dr. Hill gives you is he states, yes, Jones discloses one entry per vehicle control unit that has all of the travel data, and I think any fair read of Jones confirms that it's one entry per vehicle control unit, all the data for that VCU, not each corresponding cell for each successful point. And yes, Jones does teach that the vehicle control unit at particular times reaches certain locations or certain stops. But ultimately, what Dr. Hill gives you is only that it was known to use cells, and then he cites the patent itself, the 715 patent itself, and in particular, the inventive portion. It wasn't just that it was known to use cells, it was known to use separate cells. That was known in the art as well, separate cells. That's right, Your Honor, but again, that's still, again, even accepting that is true and even accepting that his findings, his testimony couldn't constitute... This is a testimony of the expert. Why is that wrong? I don't think we would necessarily dispute that it was known that storing things in separate cells was not known, and I'm not going to stand here and tell you that. I am going to say, though, that he doesn't give you a reason to use a cell corresponding to each tag at each successive point in the context of Jones, because ultimately, he states that yes, it was known that you could store certain data in separate cells. That was known, and that the 715 patent itself uses cells. In that regard, his testimony can't sustain a finding of obviousness even on substantial evidence review, and even if you agree that his testimony provides substantial evidence, there's simply not enough there. There's no reason to actually do this, and the Board's findings on that regard are quite similar. Ultimately, the Board states, you know, this is finite options, this is a routine selection, but the Board doesn't make any factual findings of why there's a small number of options or identifies what those options are, and to the extent the Board's final written decision rests on some contention that there's one reading per cell versus multiple readings per cell, and those are the only two options, the Board didn't make that finding express that those are the only two options, and there isn't evidence on the record that would support such a finding. Ultimately, what Dr. Hill's testimony comes down to is, again, even if you accept everything that he's saying is accurate and could provide substantial evidence, you have a legally deficient obviousness rationale here. You have something that essentially is pure could, that it could be used, and there's no actual reason to do it. In that regard, his testimony is even more deficient than something this Court held inadequate in TQ Delta versus Cisco two weeks ago. In TQ Delta versus Cisco, the expert at least provided a reason to do it. He noted that you would reduce the peak to average ratio in the signal processing system, and that had certain benefits for reducing power consumption and making things more efficient. We don't even have that in Dr. Hill's testimony. You just have, essentially, it was known to sort things in separate cells, the 715 patent does it, and so, therefore, it's obvious. Your Honors, I see I'm into my rebuttal time. I'm happy to answer any more questions you have, but if not, I'll reserve the remainder of my time for rebuttal. We will save it for you, Mr. McNish. Mr. Tucker. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Dan Tucker on behalf of the Appellee FedEx Corporation. I'd like to take the two arguments in the order that Mr. McNish made them, if that's okay with the Court. First, to address Judge Lurie's question about waiver. Ivy absolutely waived this argument. The only thing for the tag reading limitation that Ivy can point to is a single paragraph at Appendix 343 to 344 in its patent owner response. But that paragraph, like we explained, makes the exact same distinction that the Board found they made, which is the difference between identity data and travel data, which was a different argument than the one that they presented in their blue brief. Ivy cites a case multiple times in the gray brief that we agree with. The law is, was the Board on notice? Was the Board on notice that Ivy was making this argument? And the final written decision demonstrates that the Board was not on notice. The Board says in the final written decision that Ivy made two arguments. One was the definition of tag, and two was the argument that we were just talking about, identity data versus travel data. What makes this argument even weaker for Ivy, though, is that Ivy actually made the attempt to read argument in its preliminary response. It made it in the preliminary response, and the Board rejected it. The Board rejected it at Appendix 249, where the Board explained that the reader, requiring the reader to initiate the read is not commensurate with the scope of the claims. And then Ivy dropped the argument. And Nuvasiv says that if you don't make the argument in your patent owner response after you've made it in your preliminary response, you waive it. Similarly, the scheduling order in this case admonished the patent owner that if you don't make the argument in your patent owner response, it's waived. So this argument is waived. Nonetheless, on the merits, the statement about active RFID, it's in the 7.5 patent. It's in the 7.15 patent, so this can't be a surprise to Ivy that their own patent teaches active RFID that doesn't require a request. And like we explained in the Red Reef, the only reason we added this is because this is a new argument that wasn't made in the patent owner response. Ivy's argument also ignores the fact that Jones actually discloses that the BCU initiates a request to the BCU. And it also ignores Dr. Hill's testimony, which is, again, substantial evidence to support the board's finding, at paragraph 40 where Dr. Hill says the BCU can request the information from the BCU at any desired time, i.e. at scheduled stops. So even under Ivy's tortured reading of the claims that requires initiating a read, which substantial evidence supports the finding. If I can move on briefly to the data structure argument, the CEL, I think it's important to recognize what's not disputed here. What's not disputed here is Jones teaches a data table with entries in it that store travel data in the various entries. And there's also no dispute. And Ivy even contends at the Gray Brief at 14 that it is an, quote, unremarkable assertion that a person designing a data table has a choice about whether to store multiple pieces of information in one cell or in separate cells. Gray Brief at 14. So to the extent Ivy argues that there's no evidence in this case that you basically have an either or option, they've admitted it in their briefing. Just last couple points on the law. Could is not in Dr. Hill's analysis. Would is. They made the same argument in the Gray Brief, but unfortunately for them, Dr. Hill said it would have been obvious to one skilled in the art. And the TQ Delta case, I confess that I haven't read it in detail, but we're talking about signal processing in that case. We're talking about a table that everybody agrees has cells in between. When you have a truck that's making multiple stops, do you put data for one stop in each cell or do you cram it all together in another cell? Dr. Hill testified that it would have been obvious to one skilled in the art reading Jones that you would put it in separate cells. The board credited that testimony and that substantial evidence. Unless the court has questions, I'll save the rest of my time. Nothing about fruitcakes. No, sir. Thank you, Mr. Fayen. We're seeing a lot of you these days. Happy holidays, Your Honor. More nightmares, please. You must be the new civil appellate person on this issue. I think I've seen you a couple of months ago, but it's good to be back, Dennis Fan, on behalf of the United States on the constitutional issues here. Obviously, this court is well aware that several decisions of the court, including Celgene, Arthrex, and OSI, have resolved all of the retroactivity challenges at issue here. Of course, those cases only reaffirmed the past decisions of this court already in Pat Larkin's joint technologies. If this court doesn't have further questions, I'm happy also to save the rest of my time. We note that Mr. McNish didn't raise the point. Did not raise the point at all. Thank you, Mr. Fayen. Thank you. Mr. McNish has some rebuttal time. Yes, Your Honor. Thank you. So, Your Honor, I'd like to first address the waiver issue that FedEx discussed. The board was fairly on notice of this contention, and while it perhaps didn't address it as fulsomely as we would have liked, we did nonetheless put them on notice. And I direct you to Appendix 18 in the final written decision. According to Pat and Owner, Jones's Base Station Control Unit is not seeking information concerning the current location of each VCU that passes a specific point, but rather Jones teaches that the BFCU seeks information only from certain VCUs the VCU is currently of interest to a particular user. And that's quoting our Pat and Owner response at 24, which is at Appendix 344. The board was on notice of our contentions on this. True, we raised it in our preliminary response. We raised it again in our Pat and Owner response, albeit in a slightly different guise. But it has been presented. Turning to FedEx's contentions about the Base Station Control Unit being able to request the location of a vehicle control unit on demand, you know, we initially first note that that was not the basis of the board's final written decision. While the board acknowledged that FedEx had presented contentions in that regard at Appendix 16, it ultimately did not invoke that discussion in Appendix 19 in finding that Jones purportedly teaches attempting to read each tag at each successive point. Ultimately, it relied purely on the predetermined stops and locations disclosure, and it did not discuss the particular request embodiment. Nonetheless, that would still not be a basis for affirmance, even if reached, ultimately because the request embodiment in Jones is about requesting information about how far a VCU is away from one of these predetermined stops or locations. Of necessity, the vehicle control unit is not at the predetermined stop or location that the board mapped to the particular successive points. So even were this court to reach that, that would not serve as substantial evidence to teach the claim limitations. The requests aren't occurring at each successive point in a business process. I want to turn to Dr. Hill's testimony, and in particular, the discussion of the gray brief citing his testimony. My colleague suggested that IV had admitted that essentially there were finite options, and actually what we stated was that's how we characterize Dr. Hill's testimony. This is our gray brief at 14. Ultimately, Dr. Hill's testimony amounts to an unremarkable assertion that a person designing a data table from scratch has a choice about whether to store multiple pieces of information in one cell or in separate cells. So again, we disagree that there's sufficient evidence in the record to support that finding. Even if that were true, we don't think that would be enough to support a finding of obviousness in this case by substantial evidence. So IV did not, I would disagree with the contention that our gray brief conceded this. So unless the panel has any further questions, I'm prepared to conclude. And in that regard, I think we'd simply request that the board reverse the final written decision of obviousness as to claims 1, 2, 11, and 12. Thank you. Thank you, counsel. We'll take the case under advisement.